UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ALICEA N. GIGANTE,

    Plaintiff,

v.                                                Civ. No. 22-168 KWR/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION ON PLAINTIFF'S MOTION TO REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 26] ("Motion"). The Motion is fully briefed. *See* ECF 28 ("Resp.").[1] As explained below, the Court concludes that the Administrative Law Judge (ALJ) (1) did not err in discounting the opinion of a consulting psychological examiner and (2) supported her findings with substantial evidence. Consequently, the Court recommends that the Motion be denied and that this case be dismissed with prejudice.[2]

## I. BACKGROUND

Plaintiff is 33 years old with three children and a high school education. Administrative Record [ECF 21 through ECF 21-9] ("AR") at 70, 269, 277. As of December 2019, she lived with her fiancé and a daughter in Rio Rancho, New Mexico. *See id.* at 71–72, 78, 237. She held a number of jobs from May 2009 through May 2018, including as a stocker at a Circle K convenience store, a cashier at Michaels craft store and Smith's grocery store, a receptionist at a veterinary

---

[1] Plaintiff declined to file a reply. *See* ECF 29 (Plaintiff's Notice of Briefing Complete).

[2] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's May 16, 2022, Order of Reference. ECF 16.

clinic, and a fast-food worker at Domino's Pizza and Sonic Drive-In. AR at 247–49, 269, 292. She most recently applied for disability benefits in August 2018 (age 28), alleging she has been unable to work since March 2013 (age 22) due to several mental impairments (bipolar/manic disorder, PTSD, reactive attachment disorder, depression, and "extreme fear"). *Id.* at 37, 237–46, 268.[3]

The Social Security Administration (SSA) denied Plaintiff's claims in December 2018. *Id.* at 37. In May 2019, the SSA again denied her claims upon reconsideration. *Id.* Plaintiff then attended an administrative hearing with ALJ Lillian Richter in December 2019. In November 2020, the ALJ denied Plaintiff's claims. *Id.* at 34–60. In June 2021, the Appeals Council denied Plaintiff's request for review, affirming that "the [ALJ's] decision is the final decision" for purposes of judicial review. *Id.* at 12–18. In March 2022, after receiving an extension, Plaintiff timely filed suit in this Court. ECF 1; AR at 1–3.

Plaintiff now claims that the ALJ "improperly reject[ed] the medical opinion of [a] psychological consultant" and thus "failed to base her decision on substantial evidence." Mot. at 1–2, 6–12. Consequently, Plaintiff now "requests that this court reverse the ALJ's decision and remand her claims for further administrative proceedings." *Id.* at 2, 12.

---

[3] Plaintiff also applied for (and was denied) disability benefits three previous times—in 2008 (age 17), 2010 (age 19), and 2011 (age 20). AR 96, 110. In addition, at 5'5" and up to 210 pounds, Plaintiff alleges issues with "chronic pain in her back"—not because of her "body mass index (BMI) of more than 35"—but rather "[as a] result of domestic violence from a former partner" who apparently "put [her] through tables" when she was 19 years old. Mot. at 1; AR at 40, 45, 53, 79, 1132. Nevertheless, the Court need not address Plaintiff's physical conditions, as her Motion is based solely on her mental impairments. *See* Mot. at 6–12; *cf.* AR at 45 (ALJ observing that Plaintiff "acknowledged she did not have back problems in 2018 when she [most recently] applied, but now [testifies] it is primarily her back problems that are preventing her from working").

## II. STANDARD OF REVIEW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *E.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citing 20 C.F.R. § 416.920). The first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, however, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B. Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and

supported her findings with substantial evidence, the Commissioner's decision stands. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [he] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (quotation and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an

4

administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

### III. PLAINTIFF'S CONTENTIONS

Plaintiff claims the ALJ "committed reversible legal error" by "improperly rejecting the medical opinion of the psychological consultant." Mot. at 1–2, 6–12. Plaintiff argues that the ALJ "fail[ed] to provide adequate reasons for rejecting the opinion" because (1) there are simply no "valid facts in the record" to "support a rejection of [the] opinion" and (2) "there is substantial evidence that supports and is consistent with [the opinion]." *Id.* at 6–12. Consequently, Plaintiff concludes that "the ALJ's findings contrary to [the] opinion are not supported by substantial evidence" and requests that "[t]his harmful legal error . . . be reversed." *Id.* at 11–12.

### IV. ALJ'S DECISION AND FINDINGS

Having followed the SSA's five-step process and after "careful consideration of all the evidence," the ALJ found that Plaintiff was not "disab[led] within the meaning of the Social Security Act from March 1, 2013, through [November 23, 2020]," the date of the ALJ's decision. AR at 38.

#### A. Steps One Through Three

At step one, the ALJ found that, although Plaintiff "worked after the alleged disability onset date," such work "did not rise to the level of substantial gainful activity." *Id.* at 40. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, obesity, learning disorder, [PTSD], bipolar disorder, major depressive disorder,

5

mood disorder, and generalized anxiety disorder." *Id.*[4]  The ALJ, however, concluded at step three that none of these impairments, individual or collectively, met the severity of the "listed impairments." *Id.* at 41–44.

### B. Step Four and Five

At step four, the ALJ found that Plaintiff's statements concerning the severity of her symptoms "[were] not entirely consistent with . . . [the] evidence." *Id.* at 45, 47.  In addition, the ALJ found that Plaintiff had the "residual functional capacity" ("RFC") to perform a range of light work with the following mental limitations:

> [Plaintiff] can perform detailed, but not complex, work.  She can make simple work related decisions in a workplace with few changes in the routine work setting.  She cannot perform assembly line production work.  She can have incidental interaction with supervisors and coworkers, and no interaction with members of the public.

*Id.* at 44.  In support of these RFC findings, the ALJ discussed the following medical opinions:

> At the initial level, Richard Sorenson, Ph.D., opined [Plaintiff] is capable of understanding, remembering and carrying out simple instructions, attending and concentrating sufficiently to complete a routine work day without significant interruptions from psychologically-based symptoms, exercise reasonable judgment, and interact appropriately with coworkers, supervisors, and the general public on an incidental basis.  Joan Holloway, Ph.D., had essentially the same opinion at the reconsideration level, but opined she could not interact appropriately with the general public.  [I] find[ ] their opinions persuasive because Dr. Sorenson and Dr. Holloway supported their opinions with references to the objective medical evidence and their opinions are consistent with the record as a whole. . . .
>
> Dr. Dhanens [conducted a "consultative mental status exam in November 2018" and] opined [Plaintiff] appeared too symptomatic to stay focused on work activities or tolerate any stress or overstimulation.  However, he noted that he did not know how representative this was of her normal mental status, versus whether it was situational.  [I] find[ ] Dr. Dhanen[s]'s opinion unpersuasive as it is not consistent with the record as a whole.  Although [Plaintiff] presented as quite anxious, agitated and labile, he noted her thought process was not disrupted by intrusive ideation, flashbacks, or hallucinations.  She scored 30/30 on the MMSE [Mini Mental State

---

[4] *See also* AR at 38–39 (observing that a "severe impairment" is any impairment that causes "more than a minimal effect on the claimant's ability to perform basic work activities" (citing 20 C.F.R. § 404.1520(c); SSR 85-28 and 16-3p)).  In citing the regulations from 20 C.F.R. Part 404, the Court omits the Parallel citations at 20 C.F.R. Part 416.

6

>  Exam] and her speech was unremarkable.  Her comprehension was good, she was able to give relevant answers to questions, and give a history that was generally consistent with her prior records.  Dr. Dhanens noted she seemed to be of average intelligence, although earlier testing showed her scoring in the low average range.  These findings do not support that she would be unable to stay focused on work activities, or be unable to tolerate any stress or overstimulation.  Furthermore, [Plaintiff's] presentation with Dr. Dhanens was inconsistent with her presentations to her treating providers.  Her earlier mental status exams in 2018 were normal except for mood swings when she was taking her medications as prescribed.

*Id.* at 51–52 (extensive citations omitted).  The ALJ also discussed the following evidence in support of her RFC findings:

> (1) Plaintiff's testimony that "she has been receiving counseling once per week since 2019.  She said she has been taking medication for almost two years, and said they help.  She said she is doing better on her medications, and her mood is more stable."  *Id.* at 45.
>
> (2) Plaintiff's use of "therapy since January 2019.  Her therapist's mental status exams were generally unremarkable except for showing she had anxious or angry mood on occasion."  *Id.* at 50 (extensive citations omitted).
>
> (3) Plaintiff's "mental health progress notes since . . . January 2018," which have continued to show that her mental symptoms are fairly well controlled with her medications," such as mental status exams from January 2018 through September 2019 that generally showed largely normal findings—including "normal [findings] except for mood swings" or even "entirely normal [findings]."  *Id.* at 48–50 (extensive citations omitted).
>
> (4) Medication management notes from 2014–17, showing that "her symptoms were fairly controlled with the medication" and mental status exams from this timeframe showing "normal [findings] except for irritable mood, constricted affect, and mood swings."  *Id.* at 48 (extensive citations omitted).

In light of the RFC findings, the ALJ found that Plaintiff was unable to perform her past relevant work.  *Id.* at 53.  Nevertheless, at step five, the ALJ found that there were "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as marker, router, and routing clerk.  *Id.* at 54.  Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.* at 55.

**V. DISCUSSION**

    **A. ALJ Did Not Err in Discounting Dr. Dhanens's Opinion**

The Court holds that the ALJ did not err in finding "unpersuasive" Dr. Dhanens's opinion—i.e., his assessment that "[*a*]*s she presented*, [Plaintiff] appeared too symptomatic to stay focused on work activities, tolerate any stress or overstimulation." AR at 922 (emphasis in original).

In discussing the revised rules for how an ALJ must "consider and articulate medical opinions," 20 C.F.R. § 404.1520c, the Tenth Circuit states:

> Under [these] revised rules [which apply to claims filed after March 26, 2017], an ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion. The ALJ will instead evaluate the persuasiveness of medical opinions using five factors—supportability, consistency, relationship with the claimant, specialization, and other factors such as "a medical source's familiarity with the other evidence in a claim." Supportability and consistency are the most important factors, and the ALJ must explain how he or she considered them.

*Allred v. Comm'r*, No. 22-4044, 2023 WL 3035196, 2023 U.S. App. LEXIS 9544, at *4–5 (10th Cir. 2023) (unpublished) (quoting 20 C.F.R. § 404.1520c(a)–(c)). In other words, the ALJ must "articulate in [her] determination or decision how persuasive [she] find all of the medical opinions," particularly by "explain[ing] how [she] considered the supportability and consistency factors." § 404.1520c(b).[5]

The Court finds that the ALJ did articulate how persuasive she found Dr. Dhanens's opinion. *See* AR at 52 ("[I] find[ ] Dr. Dhanen[s]'s opinion unpersuasive.") In addition, the ALJ sufficiently explained how the opinion's lack of "supportability and consistency" rendered it

---

[5] The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," "the more persuasive the medical opinions . . . will be." § 404.1520c(c)(1). And the consistency factor provides that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2).

unpersuasive. For instance, the ALJ explained that the opinion *itself* questioned its own supportability. *See id.* (ALJ explaining that "[Dr. Dhanens] noted that he did not know how representative [his opinion] was of [Plaintiff's] normal mental status" (citing *id.* at 922)); *see also id.* at 922 (Dr. Dhanens expressly stating that his opinion applied only to "*as [Plaintiff] presented*" during her November 29, 2018, consultative mental status exam (emphasis in original)). The ALJ also discussed how Dr. Dhanens's own findings "do not support that [Plaintiff] would be unable to stay focused on work activities, or be unable to tolerate any stress or overstimulation." *Id.* at 52.[6]

The ALJ further explained that the opinion "[was] not consistent with the record as a whole." *Id.* For example, the ALJ observed that "[Plaintiff's] presentation with Dr. Dhanens was inconsistent with her presentations to her treating providers." *Id.*; *see*, *e.g.*, *id.* at 45, 50 (ALJ explaining that "[h]er therapist's mental status exams were generally unremarkable except for showing she had anxious or angry mood on occasion"). The ALJ also noted that "[Plaintiff's] earlier mental status exams in 2018 were normal except for mood swings when she was taking her medications as prescribed" and that the medication management notes showed that "her symptoms were fairly controlled with the medication." *Id.* at 48–50, 52.

In sum, the ALJ properly discounted Dr. Dhanens's opinion after adequately explaining how that opinion lacked supportability and consistency.

**B. Substantial Evidence Supports ALJ's RFC Findings**

The Court finds that substantial evidence supports the ALJ's RFC findings. As noted, the

---

[6] The ALJ specifically referred to Dr. Dhanens's findings that (1) "[a]lthough [Plaintiff] presented as quite anxious, agitated and labile," her "thought process was not disrupted by intrusive ideation, flashbacks, or hallucinations"; (2) "[s]he scored 30/30 on the [Mini Mental State Exam] and her speech was unremarkable"; (3) "[h]er comprehension was good, she was able to give relevant answers to questions, and give a history that was generally consistent with her prior records"; and (4) "she seemed to be of average intelligence." AR at 52.

ALJ essentially found that Plaintiff had the RFC to perform "simple work" in a routine setting that required only "incidental interaction with supervisors and coworkers." *Id.* at 44. The Court concludes that the record contains sufficient—i.e., "more than a mere scintilla"—of evidence to support this RFC finding. *Biestek*, 139 S. Ct. at 1154; *see supra*, Section IV(B) (recounting the evidence the ALJ relied on in formulating this RFC).

Furthermore, such a finding "shall be conclusive." 42 U.S.C. § 405(g). The Court thus rejects Plaintiff's argument that the evidence could support a different RFC. *See* Mot. at 7–12 (asserting that "substantial evidence . . . supports and is consistent with [Dr. Dhanens's opinion]"); *see also Lax*, 489 F.3d at 1084 (observing that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" (quotation omitted)); *Newbold*, 718 F.3d at 1262 (observing that courts cannot "reweigh the evidence nor substitute [their] judgment for that of the agency").

In sum, the ALJ applied the correct legal standards in discounting Dr. Dhanens's opinion and supported her RFC findings with substantial evidence.

## VI. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion [ECF 26] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.